IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY N. JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:09CV972-SRW |
| | ) (WO) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF OPINION**

Plaintiff Kimberly N. Jackson brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On October 2, 2006, plaintiff filed applications for disability insurance benefits and supplemental security income. On March 31, 2009, after the claim was denied at the initial administrative level, an ALJ conducted an administrative hearing. The ALJ rendered a decision on June 9, 2009. The ALJ concluded that plaintiff's date last insured was September

30, 2008, and that she had not engaged in substantial gainful activity since her alleged onset date. He found that she suffered from the severe impairments of anxiety disorder, panic attacks, and syncopal disorder. He found that plaintiff's impairments, considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform her past relevant work as a child care worker.  Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. On September 23, 2009, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings.  Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court.  The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  Davis, 985

F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff filed her applications for disability benefits in mid-October 2006, alleging disability due to "[s]eizure and anxiety attacks." (Exhibit 2E). She asserted that her condition first bothered her on August 15, 2006, and that she became unable to work on that date. (R. 134).[1] She reported that she completed two years of college in 2001 (R. 139) and that she worked from November 2000 to February 2002 as a child care worker (R. 134).

On September 12, 2006, plaintiff was admitted to Coosa Valley Medical Center for testing and observation after she reported passing out the previous day, and having similar episodes once a month. (Exhibit 2F-5F). Her hospital stay was uneventful and diagnostic testing revealed no abnormalities other than a positive drug screen for THC, amphetamines and methamphetamines. Plaintiff was discharged from the hospital on September 14, 2006, with an assessment of "[s]yncopal episode most likely secondary to drug abuse" and instructions to stop the use of drugs, seek rehabilitation and follow up with her primary care physician. (R. 202).[2] The record includes documentation of plaintiff's visits to the emergency room a few times in September and October 2006 and again in January 2007, with

---

[1] By letter dated April 6, 2009, to the ALJ, plaintiff's attorney amended plaintiff's alleged onset date to June 12, 2007, the date of her initial intake evaluation by the counselor at EAMHC. (R. 96).

[2] Plaintiff then denied any history of drug use (R. 202), as she did in her disability application (R. 161-62) and in her consultative physical and psychological examinations (R. 230, 238).

complaints of passing out frequently. In July 2008, plaintiff sought treatment on several occasions, from different medical providers, for episodes of passing out; however, objective tests identified no physical cause for plaintiff's reported seizures. In late March 2009, plaintiff visited the emergency room twice, complaining of repeated seizure episodes. (Exhibits 2F-5F, 8F, 14F-19F).[3]

Plaintiff does not contend before this court that she suffers disabling limitations due to a physical impairment; rather, her allegations of error relate to the ALJ's analysis of the limitations caused by her emotional impairments. (See Plaintiff's brief, Doc. # 14). Plaintiff first sought mental health treatment in the spring of 2007 for anxiety and panic attacks; on June 12, 2006, she reported to the East Alabama Mental Health Center ("EAMHC") for intake evaluation. She began counseling in August 2007 and her first evaluation by a psychiatrist, Dr. Rowe, occurred on August 24, 2007. On July 21, 2008, Dr. Rowe completed a mental residual functional capacity questionnaire on which she indicated that plaintiff's degree of restriction or impairment is "marked" as to five of sixteen rated work-related mental functions and "moderate" as to ten. To the query "[e]stimated number of days per month that patient would be unable to complete a normal workday without interruptions from psychologically based symptoms," Dr. Rowe responded "15-20." She indicated "?" in

---

[3] In her disability report, plaintiff reported three inpatient hospitalizations at Russell Medical Center – in 1994, August 2002 and July 2006 – and "about 32 [emergency room] visits from 1994 until 2003" for anxiety attacks. (R. 137). The disability examiner requested and received records from Russell Medical Center (Exhibit 1F). These include ER treatment notes on July 17, August 17, and September 10, 2006, for complaints of a puncture wound to plaintiff's foot, conjunctivitis, and abdominal cramps and heavy vaginal bleeding. Plaintiff's attorney submitted ER treatment records from Russell Medical Center for November 26, 2007 (flank pain and burning urination), July 7, 2008 (complaining of passing out several times with seizure-like activity) and March 24 and 26, 2009(same). (Exhibits 11F, 14F, 23F). There are no treatment records in the administrative transcript evidencing the three reported inpatient admissions to Russell Medical Center or the 32 ER visits for treatment of anxiety between 1994 and 2003.

response to a question about whether plaintiff's limitations had lasted or could be expected to last at the indicated level of severity for twelve months or longer. Although the form has a section for comments, Dr. Rowe provided none. (Exhibit 20F, R. 483-85). Plaintiff continued to receive treatment from EAMHC through February 2009. (Exhibits 12F, 13F, 21F, 22F). She contends that the ALJ erred by failing to apply the "treating physician rule" properly and by relying on opinions of a non-examining reviewing psychologist and a non-examining medical expert who testified at the administrative hearing which were inconsistent with the opinions of plaintiff's treating mental health medical sources.

### Treating Physician Rule

"If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight." Roth v. Astrue, 249 Fed. Appx. 167, 168 (11th Cir. 2007)(unpublished opinion)(citing 20 C.F.R. § 404.1527(d)(2)). "If the treating physician's opinion is not entitled to controlling weight, . . . 'the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.'" Id. (citing Crawford v. Commissioner, 363 F.3d 1155, 1159 (11th Cir. 2004)). "If the ALJ finds such good cause and disregards or accords less weight to the opinion of a treating physician, he must clearly articulate his reasoning, and the failure to do so is reversible error." Pritchett v. Commissioner, Social Security Admin, 315 Fed. Appx. 806 (11th Cir. 2009)(unpublished opinion)(citing MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.

1986)).  "When the ALJ articulates specific reasons for not giving the treating physician's opinion controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. Schuhardt v. Astrue, 303 Fed. Appx. 757, 759 (11th Cir. 2008) (unpublished opinion)(citing Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005)). The Eleventh Circuit has found good cause for discounting a treating physician's report when the report "'is not accompanied by objective medical evidence or is wholly conclusory.'" Crawford, *supra* (quoting Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir.1991)). Additionally, there is good cause where the treating physicians' opinions are "inconsistent with their own medical records," Roth, *supra* (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) or "when the opinion appears to be based primarily on the claimant's subjective complaints of pain." Freeman v. Barnhart, 220 Fed. Appx. 957, 960 (11th Cir. 2007)(citing Crawford, *supra*).  "The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. Carson v. Commissioner of Social Sec., 373 Fed. Appx. 986, 988 (11th Cir. Apr. 20, 2010)(citing Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985)).

**Non-examining Medical Experts**

Social Security Ruling 96-6p provides that "[f]indings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review." The Ruling indicates that the medical opinions of

such consultants must be considered, and states that "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  The opinions of non-examining medical sources, "when contrary to those of examining [sources], are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence."  Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987).  However, the ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources.  Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991).  Additionally, where the ALJ has discounted the opinion of an examining source properly, the ALJ may rely on the contrary opinions of non-examining sources.  See  Milner v. Barnhart, 275 Fed. Appx. 947 (11th Cir. 2008)(unpublished opinion)(where ALJ rejected conflicting opinion of one-time examining physician properly, ALJ did not err by giving substantial weight to the opinions of non-examining psychologists); Wainwright v. Commissioner of Social Security Administration, 2007 WL 708971 (11th Cir. 2007)(unpublished opinion)(where ALJ rejected examining psychologist's opinion properly, the ALJ was entitled to rely on the opinions of non-examining state agency psychologists).

**The ALJ's Analysis of the Opinion Evidence**

In January 2007, before plaintiff began mental health treatment, state agency psychologist Dr. Robert Estock reviewed the documentary evidence then in the record, including the report of the consultative examining psychiatrist. (Exhibit 9F).  Dr. Estock completed a PRTF form, concluding that plaintiff's anxiety disorder is not "severe." (R. 248,

253). He further concluded that plaintiff suffered no limitation in maintaining social function, and had mild restriction in activities of daily living, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. (R. 258). At the administrative hearing on March 31, 2009, psychologist Dr. Doug McKeown testified similarly as to plaintiff's restrictions after reviewing the medical record. He testified that Dr. Rowe's assessment of marked limitations was not supported by Dr. Rowe's progress notes, "where Dr. Rowe refers to the Claimant as being basically stable on medication and with no indication of significant debilitating symptoms and difficulties." (R. 38). Dr. McKeown testified that there was no information in plaintiff's individual progress notes to demonstrate that she meets a listing. (R. 38-39). He further testified that, in his opinion, plaintiff had "mild impairments of activities of daily living, social functioning, and concentration, persistence and pace with no episodes of decompensation in work or work-like settings." (R. 39). On cross-examination, Dr. McKeown testified, again, that Dr. Rowe's "progress notes do not point out [the] level of severity" indicated by Dr. Rowe in the mental RFC questionnaire. He testified, "the one that particularly jumps out is the one that would look at her marked impairment of completing simple tasks and that would just not appear to be consistent with the presentation, her actual abilities and capabilities. If it was for complex tasks that would make a whole lot more sense but I do not understand that particular level of severity when the progress notes do not reflect anything like that." (R. 42).

At the time he so testified, Dr. McKeown believed that plaintiff had seen a psychiatrist at EAMHC only three times and had attended mental health counseling there only three

8

times. (R. 37). It became apparent during the hearing that Dr. McKeown had not received all of plaintiff's mental health treatment records. Dr. McKeown was provided with the additional records and reviewed them during the hearing. (R. 39, 48-52). After he did so, he testified that the treatment notes reflected "general stability on the anxiety and depressive symptoms, some irritability, [and] some other symptoms, but nothing that in my opinion would significantly change my previous testimony other than the number of visits. (R. 51-52).[4]

In his decision, the ALJ summarized the record of plaintiff's mental health treatment (R. 15-17, 19), the report of the consultative psychological examiner and the PRTF completed by Dr. Estock after the consultative examination (R. 14-15). He also summarized Dr. McKeown's hearing testimony. (R. 20-22). The ALJ noted the EAMHC record for December 20, 2007, four months after plaintiff was started on medication (R. 312) – plaintiff had reported that she was better, with less anxiety, and that she was sleeping better (five hours a night) and her appetite was good. She was noted to be neat in appearance, with clear speech, "full/bright" affect, and organized thought process. (R. 17; see R. 308).[5] The ALJ observed that when plaintiff returned to EAMHC on February 18, 2008, she reported two panic attacks within the previous week but that, when she next returned on April 24, 2008,

---

[4] Plaintiff saw an EAMHC psychiatrist ten times between August 2007 and February 2009. She attended her intake evaluation and seven individual counseling sessions with her counselor, Lucy Lawrence, between June 2007 and July 2008. Thereafter, plaintiff failed to show for her individual counseling sessions. She attended a group therapy session on February 16, 2009. (Exhibits 12F, 13F, 21F, 22F). Dr. Rowe completed the mental RFC questionnaire on July 21, 2008, during her third visit with the plaintiff. Dr. Rowe had seen plaintiff previously on August 24, 2007, and February 18, 2008. (R. 291, 307, 311, 490).

[5] The psychiatrist, Dr. Schuster, noted "mood still down a lot[.]" (R. 308).

she reported fewer panic attacks and "none lately," that her mood, sleep and appetite were "OK," and she was sleeping eight hours a night. (R. 19; see R. 306-07). The ALJ indicated that, when plaintiff returned on June 18, 2008, plaintiff had reported that her sleep, mood and appetite were "OK" and that her thought process was organized and her appearance neat. (R. 19; see R. 491).[6] On July 21, 2008, the day Dr. Rowe completed the mental RFC form, plaintiff reported that she had been diagnosed with a seizure disorder by the hospital in Dadeville and she had gone to the UAB emergency room a week earlier because she was "still sick; passing out," and that she was returning to see the neurologist on September 5, 2008. (R. 490). As the ALJ noted, plaintiff told Dr. Rowe that the Paxil was helping with her anxiety. (R. 19, 490). The ALJ wrote that plaintiff failed to show up for her next two scheduled appointments at EAMHC. (R. 19; see R. 493-94). The ALJ observed that, when plaintiff returned to Dr. Rowe on October 13, 2008, she complained of "sick, dizzy spells" which sometimes seem like panic attacks but, other times, were "completely different." She told Dr. Rowe that the neurologist did not think that she was having seizures. (R. 19; see R. 489). Dr. Rowe also noted plaintiff's speech to be coherent, her appearance neat, her affect/mood full, and her thought process organized. Id. She wrote that plaintiff was "relatively stable," and she continued plaintiff's medications without change. She scheduled plaintiff for a return appointment in four months. (Id.).

The ALJ stated that he gave "little weight" to Dr. Rowe's mental RFC opinion because it is inconsistent with her treating records, which reflect stability. (R. 24). He relied

---

[6] Plaintiff also reported frequent headaches and syncope. (R. 491).

on those treating records and, also, on the testimony of Dr. McKeown that the marked limitations indicated by Dr. Rowe in the RFC questionnaire were not supported by the treatment notes. As discussed above, an ALJ may reject a treating physician's opinion if he states good cause for doing so; under the law of this circuit, there is good cause where the treating physician's opinion is inconsistent with her own medical records. See Roth, *supra,* 249 Fed. Appx. at 168 (citing Lewis v. Callahan*,* 125 F.3d 1436, 1440 (11th Cir.1997)). Upon review of the ALJ's decision and the evidence of record, the court finds that the reason articulated by the ALJ constitutes good cause for declining to accord Dr. Rowe's opinion more weight and, further, that the ALJ's reason is supported by substantial evidence. Since the ALJ rejected Dr. Rowe's opinion properly, he was entitled to rely on the contrary opinions of non-examining experts. See Milner, *supra*,

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and proper application of the law and, therefore, that it is due to be affirmed. A separate judgment will be entered.

DONE, this 10th day of March, 2011.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE